**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,                    CR. NO. 17-20456

                                             HON. LINDA V. PARKER

      Plaintiff,

v.

AMOR FTOUHI,

      Defendant.

_____/

**MOTION TO COMPEL DISCLOSURE OF WITNESSES'**
**CONTACT INFORMATION**

The parties have agreed to entry of a protective order, but one matter remains outstanding:   whether the government should release the names and contact information of persons named in discovery, and of its witnesses, to the defense.  This is Mr. Ftouhi's request for disclosure of that information. Mr. Ftouhi moves to compel disclosure of a witness list with contact information pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), Federal Court Rules of Criminal Procedure 2 and 16(d)(2), and the Fifth and Sixth Amendments to the Constitution of the United States, and this Court's inherent authority "to manage its cases to ensure the fair and effective administration of the criminal justice system."   *United States v. W.R. Grace*, 526 F.3d 499, 512 (9th Cir. 2008) (en banc).  The government should further

be required to update the witnesses' addresses and contact information throughout these proceedings. The government has proposed that it provide the names only in discovery, and will not object to cross examination about the witnesses' addresses at trial. This proposal would be extremely time consuming, create delays throughout trial, and would result in intrusive attempts to locate and interview persons with the same names as those related to this case, but who have nothing to do with this investigation.

In support of this motion, counsel states:

1.      The government accuses Mr. Ftouhi of committing an act of violence at an international airport, 18 USC § 37(a)(1), and interfering with airport security, 49 USC § 46503.  Trial is currently scheduled for September 5, 2017.

2.      These charges arise from an incident at the Flint airport on June 21, 2017.  To date, the undersigned has received only one FBI report, which documents Mr. Ftouhi's statements to agents after his arrest.  The government has disclosed that an enormous amount of discovery already exists and will continue to grow as it explores whether this case has a link to international terrorism. Further, the government will be seeking discovery from the Canadian government, which is apparently a time consuming process.

3.      The parties agree that a protective order may be entered, but disagree as to whether the government should provide the defense with  the addresses of its

2

witnesses. The government's proposed protective order is attached as Exhibit A.

4.      Counsel believes that there are numerous eyewitnesses to this incident, as well as to Mr. Ftouhi's travel between Montreal, Canada and Flint, Michigan, in the days before the incident.  In addition, Canadian law enforcement agencies have been investigating Mr. Ftouhi in Montreal.  The government has not expressed any concern about the safety of its witnesses.  Because this occurred at an airport, the witnesses to the actual event may be located in distant places.  The possible Montreal-based witnesses certainly are.

5.      The government has agreed to provide the names of persons named in discovery (who may or may not be witnesses). The parties disagree about whether the government shall also provide contact information for these persons.  This request is in line with the Stipulated Protective Order filed in the "underwear bomber" case in Detroit, *United States v Abdulmutallab*, No. 10-2005 (attached as Exhibit B, see paragraph 3).

6.      There is a compelling need to order disclosure of the contact information for a fair, effective, and orderly trial.  Such information is essential to prepare effectively for trial and to advise Mr. Ftouhi.

7.      The government has not identified any need to withhold this information—particularly in light of the stipulated protective order.  At best, it may claim a general need for witness safety.  But such unsubstantiated concerns do not

outweigh Mr. Ftouhi's need for this critical information.

8.     Finally, Mr. Ftouhi's case is effectively a capital case, which means 18 U.S.C. § 3432 grants him a right to a witness list before trial.

9.     Counsel has sought the concurrence in this motion from Assistant U.S. Attorney, Jules DePorre.  He has declined.

> Respectfully Submitted,
>
> s/Joan E. Morgan
> s/Colleen P. Fitzharris
> Federal Defender Office
> Attorney for Defendant
> 111 East Court Street, Suite L-100
> Flint, Michigan 48502
> (810) 232-3600
> joan_morgan@fd.org
> (P34482)

Dated:  July 18, 2017

4

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

       Plaintiff,

v.

AMOR FTOUHI,

       Defendant.

_____/

CR. NO. 17-20456
HON. LINDA V. PARKER

**BRIEF IN SUPPORT OF MOTION TO COMPEL**
**WITNESSES' CONTACT INFORMATION**

The government refuses to provide contact information for its potential witnesses, and for others named in discovery. Although the government is not required to disclose the names of its witnesses before trial, *see United States v. Perkins*, 994 F.2d 1184, 1190 (6th Cir. 1993); *United States v. Turner*, 91 F. App'x 489, 491 (6th Cir. 2004), it has an obligation to provide the defendant with exculpatory evidence, *Brady v. Maryland*, 373 U.S. 83, 87 (1963). In addition, this Court has the power and discretion to mandate disclosure of a witness list and contact information in appropriate circumstances. *See United States v. W.R. Grace*, 526 F.3d 499, 509–13 (9th Cir. 2008) (en banc). The circumstances of this case make disclosure necessary.

5

### A. This Court Has Inherent Authority to Order Discovery.

Few would debate that district courts have "inherent power" to manage their cases and courtrooms to ensure the fair administration of justice. *Id.* at 509–10 (collecting cases). Discretion to order the government to disclose witness lists and contact information falls within these inherent powers. *See id.* at 509–510 (collecting cases, including *United States v. Kendricks*, 623 F.2d 1165, 1168 (6th Cir. 1980) (per curiam)). For that reason, the Ninth Circuit concluded that even though Federal Rule of Criminal Procedure 16 "does not expressly mandate the disclosure of *nonexpert* witnesses, it is not inconsistent with Rule 16 and Rule 2 for a court to order the government to produce a list of such witnesses as a matter of its discretion." *Id.* at 510.

District courts should exercise such discretion when the defendant presents a "compelling need" to do so. *United States v. Slough*, 669 F. Supp. 2d 51, 59 (D.D.C. 2009). When deciding whether to order production of witness lists with contact information, district courts should consider and weigh the defendant's need to prepare for trial, the right to effective cross-examination, the expediency of trial, the possibility of witness intimidation, and "the intrinsic reasonableness of the request." *United States v. Madeoy*, 652 F. Supp. 371, 375–76 (D.D.C. 1987) (granting the defendant's motion for a government witness list in light of the very large number of witnesses involved in the case, the intrinsic reasonableness of the request and the

6

unlikelihood of witness intimidation).  In *Slough*, for example, where the defendants were charged for the deaths of numerous Iraqis in downtown Baghdad, 69 F. Supp. 2d at 53–54, the district court granted the defendants' motion to compel a witness list with up-to-date contact information because there were hundreds of potential witnesses to the incident—some of whom were located in a foreign country, *id.* at 60.  In addition, the court was concerned about the fast-approaching trial date and defense counsel's ability to prepare.  *Id.*

Each of these same factors are present in this case.

## B. The Evidence May be Exculpatory.

Exculpatory evidence must be disclosed "in time for its effective use at trial." *United States v. Presser*, 844 F.2d 1275, 1283 (6th Cir. 1988).  The government that it "acts at its own peril" if it fails to provide *Brady* materials in a *timely fashion*. *Id.* at 1281.  Although courts have declined to specify the timing of disclosure that *Brady* requires, a prosecutor is obliged to disclose material exculpatory evidence "at the earliest feasible opportunity" and "as soon as practicable following the filing of charges." *See* ABA Standards, Nos. 11-2.1(c), 11-2.2(a).

The time to disclose witnesses' names and contact information is now.  In *Leka v. Portuondo*, 257 F.3d 89, 100 (2d Cir. 2001), the Second Circuit recognized that "the longer the prosecution withholds information, or (more particularly) the closer to trial the disclosure is made, the less opportunity there is for use."  This is

so, in part, because "new witnesses or developments tend to throw existing strategies and preparation into disarray." *Id*. at 101.  Indeed, "[t]he more a piece of evidence is valuable and rich with potential leads, the less likely it will be that late disclosure provides the defense an 'opportunity for use,'" *DiSimone v. Phillips*, 461 F.3d 181, 197 (2d Cir. 2006), *i.e.*, "the opportunity for a responsible lawyer to use the information with some degree of forethought," *Leka*, 257 F.3d at 103.

Trial is currently  scheduled for a little over a month away.  To use any of the witness information effectively, the government's proposal  requires a defense investigator to act quickly to interview or investigate each person so counsel can use the information gathered in time for trial.  In some cases, this may require extensive travel.  This is true regardless of whether counsel ultimately uses the evidence to impeach the witness, to introduce into evidence, or for some other purpose.  Names and contact information streamline these investigative efforts and obviate the need to expend countless hours and resources to identify the right persons to interview or investigate.

## C. Witness Contact Information is Crucial to Prepare for Trial, Effective Cross-Examination, and Counsel's Ability to Assist Mr. Ftouhi.

Defendants cannot adequately prepare for trial without witnesses' names and contact information.  *United States v Opager*, 589 F.2d 799, 804 (5th Cir. 1979). *Opager* illustrates how tardy or non-disclosure of witness information can "effectively thwart[] [a defendant's] efforts to prepare a full defense." *Id.*  There,

8

the government withheld the star witness's address "without any cause whatsoever," which meant Opager could not interview the witness. *Id.* The Fifth Circuit explained: "In particular, in criminal cases, where a defendant's very liberty is at stake, such interviews are especially crucial" because interviewing witnesses is "one of the first things responsible counsel does in preparing a case." *Id.*

Without witnesses' names and contact information, defense counsel's ability effectively to cross-examine witnesses will be undermined. Cross-examination is one of the most critical elements of a good defense. In *Smith v. Illinois*, 390 U.S. 129, 131 (1968), the Supreme Court reversed a conviction where, at trial, a government witness admitted that the name he gave was not his real name and the trial court refused to allow defense counsel to cross examine him about his name and address at trial. In doing so, the Court articulated the prejudice that inherently ensues when a defendant is deprived of information necessary to cross-examine a witness: "It is the essence of a fair trial that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination might develop. Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them." *Id.* at 132 (internal quotation marks omitted). Thus, to deprive a defendant of information to use during cross-examination "is to deny a substantial right and withdraw one of

9

the safeguards essential to a fair trial." *Id.* (internal quotation marks omitted).

Cross-examination is particularly important "when the credibility of a witness is in issue, the very starting point in exposing falsehood and bringing out the truth through cross-examination must necessarily be to ask the witness who he is and where he lives." *Id.* at 131. The Court explained that "[t]he witness'[s] name and address open countless avenues of in-court examination and out-of-court investigation" and that "[t]o forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself." *Id.*; *United States v. Cadet*, 727 F.2d 1453, 1468–69 (9th Cir. 1984) (affirming the district court's order to produce the names and addresses of all witnesses, whether the government intended to call them at trial or not). In short, adequate investigation is a key component of a good defense and a fair trial. Disclosure of the government's non-expert witnesses' names and contact information will help ensure Mr. Ftouhi's trial is fair and his defense robust.

### D. There is No Good Reason Not to Disclose the Witnesses' Names and Addresses

The government bears the burden of demonstrating the basis for withholding the information, and must support its burden by specific and articulable facts demonstrating a credible threat to witnesses' personal safety. *Accord United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1140–41 (10th Cir. 2014); *United States v. Ramos–Cruz*, 667 F.3d 487, 500 (4th Cir. 2012) ("When the government seeks to

10

withhold a witness's true name, address, or place of employment, it bears the burden of demonstrating that 'the threat to the witness is actual and not a result of conjecture.'" (quoting *United States v. Palermo*, 410 F.2d 468, 472 (7th Cir. 1969))); *United States v. Edelin*, 128 F. Supp. 2d 23, 30-31 (D.D.C. 2001) (preponderance of evidence standard met where government "*proffered examples* of other known attempts made by the defendant to interfere with the judicial process").  Once the government has proffered such evidence, courts must decide whether the Government has met its burden and, if so, whether witness safety could be ensured by less restrictive means.  *See United States v. Snell*, 899 F. Supp. 17, 20 n.5 (D. Mass 1995) (noting that the government's anticipated concerns about witness safety could be dealt with in motions for protective orders or motions for exempting from pretrial disclosure on a case by case basis).

Here, the government has not articulated a basis in fact that disclosure of information to the defense will compromise witness security. *See Ramos–Cruz*, 667 F.3d at 500 (threat must be credible and not simply conjecture).  Because the government cannot meet its burden to demonstrate a threat to witness safety, the Court should issue an order compelling the government to reveal the names and addresses of its witnesses.  After all, "[w]itnesses, particularly eyewitnesses, to a crime are the property of neither the prosecution nor the defense.  Both sides have an equal right and should have an equal opportunity to interview them." *Gregory v.*

11

*United States*, 369 F.2d 185, 188 (D.C. Cir. 1966).

### E. This is a Capital Case, and so Mr. Ftouhi Has a Right to Witnesses' Contact Information.

In accordance with 18 U.S.C. § 3432, the government must disclose a witness list to capital defendants before trial. The government seeks to have Mr. Ftouhi die in prison. As such, this is a capital case.

Recently, the Supreme Court has acknowledged that sentencings imposing life in prison without the possibility of parole are effectively death sentences. To start, "life without parole is the second most severe penalty permitted by law." *Graham v. Florida*, 560 U.S. 48, 69 (2010) (internal quotation marks omitted). And, while execution "is unique in its severity and irrevocability, . . . life without parole sentences share some characteristics with death sentences that are shared by no other sentences." *Id.* (internal quotation marks and citation omitted). Death in custody "alters the offender's life by a forfeiture that is irrevocable. It deprives the convict of the most basic liberties without giving hope of restoration, except perhaps by executive clemency—the remote possibility of which does not mitigate the harshness of the sentences." *Id.* at 69–70. Most of all, a sentence to death behind bars "means the denial of hope; it means that good behavior and character improvement are immaterial; it means that whatever the future might hold in store for the mind and spirit of the convict, he will remain in prison for the rest of his days." *Id.* at 70 (internal quotation marks and alteration omitted); *see also Miller v.*

12

*Alabama*, 567 U.S. 460, 474–75 (2012).

Although *Graham* and *Miller* discussed the impact of a death-in-custody sentence on juveniles, its teachings remain the same:  death is different means death in custody.  *See generally* William W. Berry III, *The Mandate of Miller*, 51 Am. Crim. L. Rev. 327 (2014).  Therefore, Mr. Ftouhi must receive the procedural protections available in capital cases, including a witness list with contact information.

## CONCLUSION

Mr. Ftouhi requires the contact information of witnesses to prepare for his trial.  His request is intrinsically reasonable—particularly because he is willing to agree to a protective order.  This Court should therefore grant his motion to compel.

Respectfully Submitted,

s/Joan E. Morgan
s/Colleen P. Fitzharris
Federal Defender Office
Attorney for Defendant
111 East Court Street, Suite L-100
Flint, Michigan 48502
(810) 232-3600
joan_morgan@fd.org
(P34482)

Dated:  July 18, 2017

13

## CERTIFICATE OF SERVICE

On July 18, 2017, I filed the foregoing document using the ECF system, which will send notification of the filing to counsel of record.

<u>s/Joan E. Morgan</u>