UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,   No. 4:17-cr-20456

    Plaintiff,   Hon. Linda V. Parker

v.

AMOR M. FTOUHI,

    Defendant.

---

### DEFENDANT'S RESPONSE TO GOVERNMENT'S OBJECTION TO DEFENDANT'S PROPOSED JUROR QUESTIONNAIRE

---

Defendant, Amor M. Ftouhi, by his counsel, Joan E. Morgan, responds to the government's objection to defendant's juror questionnaire:

1. The parties have agreed in large part on which questions to ask in a juror questionnaire.

2. The government objects to questions regarding the jurors' gender, national origin, and religion (R 57). But this objection misses the mark. The objection is based on the government's claim that the questions may violate *Batson v Kentucky*, 476 US 79 (1986). There are no cases stating that simply asking about religious beliefs (or anything else) violates *Batson*. <u>*Batson* violations occur as a result of excluding people from a jury on the basis of race, ethnicity, or gender, not as a result of asking questions.</u> *Batson v. Kentucky*, 476 U.S. 79, 86 (1986), holding

1

modified by *Powers v. Ohio*, 499 U.S. 400 (1991). Before determining a *Batson* violation has occurred, courts must use the following three-step analysis:

> once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step one), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step two). If a race-neutral explanation is tendered, the trial court must then decide (step three) whether the opponent of the strike has proved purposeful racial discrimination. *Purkett v. Elem*, 514 U.S. 765, 767 (1995).

3.  While some believe that *Batson* should extend to religion, the Supreme Court has denied certiorari on this question on more than one occasion. See *State v. Davis*, 504 N.W.2d 767, 767 (Minn. 1993) (rejecting the argument that "the holding of *Batson* [] should be extended to peremptory strikes on the basis of religion") *cert denied*, *Davis v. Minnesota*, 511 U.S. 1115 (1994) (Thomas, J., joined by Scalia, J., dissenting, it is "not obvious, . . . why peremptory strikes based on religious affiliation would survive equal protection analysis. . . . [T]he petition should therefore be granted, the judgment below vacated, and the case remanded for reconsideration in light of *J.E.B.*[1]"); *United States v. Jordan*, 210 F. App'x 672, 674 (9th Cir. 2006) ("We reject the defendants' religion-based *Batson* objection[.] As neither the Supreme Court nor the Ninth Circuit has extended the reach of *Batson* to peremptory challenges based on religion, any error here was not "plain.") *cert denied*, *Patrick v. United States*, 549 U.S. 1343 (2007).

---

[1] *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 128 (1994) (extending *Batson* to discrimination based on sex).

4. The Sixth Circuit has expressly declined to rule on the issue. *United States v. Mahbub*, 818 F.3d 213, 225 (6th Cir. 2016) ("Noticeably, *Batson* contains no discussion of religion . . . whether *Batson's* reasoning extends to religion remains unclear. Though the district court appeared to think that *Batson* extended to religion, we take no position on the issue.") (citations omitted).

5. Judges have "ample discretion in determining how best to conduct . . . *voir dire*." *Rosales-Lopez v. United States*, 451 U.S. 182, 189 (1981). However, there are constitutional requirements that must be met during the jury selection process. *Id*. The Supreme Court has explained:

> *Voir dire* plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored. Without an adequate *voir dire* the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled. Similarly, lack of adequate *voir dire* impairs the defendant's right to exercise peremptory challenges where provided by statute or rule, as it is in the federal courts. *Id*. at 188. (citations omitted).

6. In *Rosales-Lopez*, the Supreme Court held that in cases in which there is a reasonable possibility that racial prejudice may influence the jury, the trial court must grant a defendant's request to inquire about the racial bias of potential jurors. *Id*. In capital cases involving interracial crime, this line of inquiry is mandatory, regardless of whether the defendant requests it. *Turner v. Murray*, 476 U.S. 28, 37 (1986).

7. The Second Circuit has held the same reasoning applies to cases that

could involve religious prejudice. *United States v. Salameh*, 152 F.3d 88, 120–21 (2d Cir. 1998). In *United States v Salameh*, the Second Circuit addressed the constitutionality of jury selection in a terrorism case. *Id*. Specifically, the defendant argued that the trial judge's "fail[ure] to ask sufficiently probing questions regarding the jury panel's bias against Muslims, Arabs and Islamic Fundamentalism," deprived him of his right to a fair trial. *Id*. The Second Circuit rejected this argument, reasoning that the trial judge conducted the following "proper and searching" *voir dire*:

> Before trial, the parties submitted proposed *voir dire* questions. [Defense] counsel submitted a proposed written questionnaire with 79 questions soliciting the prospective jurors' views about "Islam, Muslims and Arabs." However, [the trial judge] declined to use a written questionnaire and instead conducted jury selection in three stages.
>
> In the first stage, potential jurors were sent to the courtroom in groups of 50. The judge explained the charges in the Indictment, read a list of names and places that might be mentioned during the trial and entertained petitions from those who sought to be excused from jury service. [The trial judge] eliminated anyone who expressed bias against the defendants or hesitancy about serving on the jury. After this stage, approximately 60 out of 150 possible jurors remained.
>
> In the second stage of jury selection, [the trial judge] randomly placed jurors in five groups of twelve. Each group was brought separately into open court where [the trial judge] asked a series of questions, including: (1) "If you had to describe your religious views, how would you do it?"; (2) "Have you ever had an incident in your life that would make it difficult to judge another person because of their race or creed or color or national origin or anything

4

like that?"; (3) "Have you ever moved out of an area because you were disturbed that the area was changing?"; and (4) "Do you think that you could be fair and impartial in a case like this?" Again, jurors who expressed bias or difficulty assessing the case impartially were excused.

In the third stage of jury selection, the judge questioned each remaining venire person privately in the jury room, with all counsel present. Before beginning the individual questioning, [the trial judge] emphasized that jurors had to be "totally fair and impartial" and base their decisions solely on the evidence. [The trial judge] asked each venire person whether he or she: (1) had ever traveled to the Middle East; (2) had any feelings about Israel; (3) would be affected in any way by the fact that the four defendants were Muslims; (4) had any friends who were Muslims; (5) had any business dealings with Muslims; and (6) could be fair and impartial in this case. [The trial judge] also asked each person follow-up questions when appropriate, to further assess his or her ability to be fair and impartial. At the end of the third stage of *voir dire*, the judge entertained counsel's challenges for cause.

Finally, before the parties exercised their peremptory challenges, [the trial judge] again asked each venire person whether he or she could be fair and impartial and whether he or she was willing to serve. [The trial judge] explained that if the answer to either of these last two questions was "no," he could excuse the venire person without further inquiry. After the jurors answered these final questions, the parties exercised their peremptory challenges. *Id.*

In finding the trial court's *voir dire* process sufficient to meet constitutional demands for a fair and impartial jury, the *Salameh* Court explained:

Inquiry as to racial or ethnic prejudice must be made when the circumstances of the case indicate that there is a reasonable possibility that racial or ethnic prejudice might have influenced the jury. However, the trial court retains great latitude in deciding what questions should be asked on *voir dire* to uncover racial or ethnic bias.

5

> [The trial judge] did not abuse his discretion in conducting jury selection. Although he chose not to use each of [the defendant's] 79 proposed questions verbatim, [the trial judge]'s inquiry as to religious, ethnic or cultural bias was proper and thorough. . . . [T]he fact that additional questions, such as those [the defendant] submitted regarding Islamic Fundamentalism, might have aided the defendants in their peremptory challenges does not render [the trial judge]'s *voir dire* defective. *Id*. (citations and quotations omitted).

8. Only peremptory challenges (not questions) can violate *Batson*. Mr. Ftouhi's case presents the same possibilities of religious bias as those at issue in *Salameh*, it is necessary that the juror questionnaire ask the potential jurors about the same. Further, given the lack of clarity regarding *Batson's* application to religion and the Sixth Circuit's refusal to rule on the issue, it is likely the use of a peremptory challenge to excuse a juror based on religion would not violate *Batson*.

Conclusion

For the reasons set forth in this response, Amor Ftouhi requests that the Court determine that his proposed questionnaire be given to prospective jurors, and overrule the government's objection.

Respectfully Submitted,

s/Joan E. Morgan
Federal Defender Office
111 E. Court Street, Suite L-100
Flint, Michigan 48502
(810) 232-3600
joan_morgan@fd.org

## CERTIFICATE OF SERVICE

On October 5, 2018, I filed the foregoing document using the ECF system, which will send notification of the filing to counsel of record.

s/Joan Ellerbusch Morgan