UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,                    Case No. 17-cr-20456

      Plaintiff,                                   Hon. Matthew Leitman

v.

AMOR M. FTOUHI,                              **FILED UNDER SEAL**

      Defendant.

_____/

**DEFENSE OBJECTION AND MOTION IN LIMINE
TO PRECLUDE THE GOVERNMENT'S ADMISSION OF
<u>PROPOSED EXHIBITS:  19, 30, 35(A), 36, 37, 38, & 16</u>**

NOW COMES Defendant, AMOR M. FTOUHI, by and through counsel, Joan E. Morgan of the Federal Defender Office, pursuant to Fed. R. Evid. (hereinafter "FRE") 104(a), moves *in limine* to preclude the government's admission of the above listed exhibits at trial.  Defendant's counsel states as follows in support of her motion:

1.      Mr. Ftouhi is charged by way of a three-count first superseding indictment with:  Count I., Violence at an International Airport, under 18 U.S.C. § 37(a)(1); Count II., Interference with Airport Security, under 49 U.S.C. § 46503; and Count III., Commission of an Act of Terrorism that Transcends National Boundaries, under 18 U.S.C. §§ 2332b(a)(1), 2332b(a)(2), and 2332b(c)(1)(A).

1

2.	Trial in this matter is currently scheduled to begin on November 6, 2018.

3.	Mr. Ftouhi brings this *motion in lime* for a pretrial evidentiary ruling as to the admissibility of the Government's following proposed exhibits:

(i.)	Exhibit 19. Is a June, 2017, bank statement from the Royal Bank of Canada (RBC), which shows that Mr. Ftouhi submitted to his bank (RBC) an empty deposit envelope for approximately $1,000.00 before he left to come to the United States, and then electronically withdrew the same amount in cash that he claimed to have previously deposited into his account;

(ii.)	Exhibit 30. Is a photograph of an assault rifle from the Gibraltar gun show, which was never purchased or used during the attack at Bishop International Airport;

(iii.)	Exhibit 35(a). Audiotaped recording of Mr. Ftouhi after his arrest, in which you can hear him spitting on a female officer, Captain Leigh Golden, he also repeatedly called her a "fucking bitch," and he can be heard praying in Arabic;

(iv.)	Exhibits 36 & 37. Both exhibits are letters Mr. Ftouhi wrote to his wife during the course of their marriage;

(v.)	Exhibit 38. Is seven photographs of the victim, J.N., following the attack, which are post-op, that show numerous stiches around his throat from the attack;

(vi.)	Exhibit 16. Is the Defendant's last will and testament found at his home in Canada, which was written on an unknown date before he came to the United States.

4.	Mr. Ftouhi moves to suppress proposed exhibit #19 on the grounds that it violates the extrinsic evidence bar of FRE 608(b), because it impeaches Defendant's character for veracity with the bank statement as evidence of his fraud.

If the evidence is offered to show plan or intent, then the defense argues it is not relevant and does not fulfill the requirements for admission under FRE 404(b). If deemed relevant, then Defendant argues it still must be excluded under FRE 403 because of the availability of other evidence the Government intends to admit at trial.

5.     Mr. Ftouhi moves to suppress proposed exhibit #30 on the grounds that a picture of an assault rifle he did not buy, or the vendor did not allow him to buy, prior to the attack on the victim, must be exclude under FRE 403 because of the availability of other evidence the Government intends to admit at trial. And, Defendant argues it must be excluded because it is substantially more prejudicial than any fact sought to be proved by its admission.

6.     Mr. Ftouhi moves to suppress portions of proposed exhibit #35(a) on the grounds that the audiotaped recording which include Mr. Ftouhi spitting on a female officer, and repeatedly calling her a "fucking bitch," is not relevant to a contested issue at trial. FRE 401. And, it will so inflame the jury as to be prejudiced against him at trial without regard to guilt. Defendant argues it must be excluded under FRE 403, because it is substantially more prejudicial than any fact sought to be proved.

7.     Mr. Ftouhi moves to suppress proposed exhibits #36 and 37 on the grounds that the letters he wrote to his wife, Najwa Ftouhi, which occurred while he was married, are confidential communications protected by the marital privilege.

8.      Mr. Ftouhi moves to suppress proposed <u>exhibit #38</u> on the grounds that the seven pictures of J.N.'s neck showing he was stitched-up after the attack will only inflame the jury and give undue sympathy to an already sympathetic victim. Defendant argues they must be excluded under FRE 403 because they are substantially more prejudicial than any fact they are offered to prove.

9.      Mr. Ftouhi moves to suppress proposed <u>exhibit #16</u> on the grounds that his undated last will and testament found by police in Canada must be excluded because it is too remote in both time and place, and not probative of a fact in issue as required by FRE 401.  Also, Defendant argues it is substantially more prejudicial than any fact sought to be proved by its admission. FRE 403.

10.     Pursuant to local court rule, LR 7.1, undersigned counsel sought concurrence of the Government, which was not obtained.

WHEREFORE, Defendant Ftouhi respectfully requests that this Honorable Court grant his *motion in limine* to preclude the Government's admission of the aforementioned proposed exhibits at trial.

Respectfully submitted,

s/ Joan E. Morgan
Attorney for Defendant
Federal Defender Office
111 East Court St., Ste. L-100
Flint, Michigan 48502
(810) 232-3600
joan_morgan@fd.org

Dated:  October 23, 2018

4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,                     Case No. 17-cr-20456

     Plaintiff,                                  Hon. Matthew Leitman

v.

AMOR M. FTOUHI,                               **FILED UNDER SEAL**

     Defendant.

_____/

**BRIEF IN SUPPORT
OF DEFENDANT'S MOTION IN LIMINE TO PRECLUDE
THE GOVERNMENT'S ADMISSION OF PROPOSED EXHIBITS**

## I.      STANDARD OF REVIEW.

Evidentiary rulings are reviewed for an "abuse of discretion." *United States v. Dixon*, 413 F.3d 540, 544 (6th Cir. 2005) (citing *United States v. Wagner*, 382 F.3d 598, 616 (6th Cir. 2004)).   "Broad discretion is given to district courts in determinations of admissibility based on considerations of relevance and prejudice, and those decisions will not be lightly overturned." *United States v. Bell,* 516 F.3d 432, 440 (6th Cir. 2008) (citation omitted).  An appellate court will not disturb rulings on the admissibility of evidence unless the Court is "left with the definite and firm conviction that the [district] court ... committed a clear error of judgment in the conclusion it reached." *United States v. Chambers,* 441 F.3d 438, 455 (6th Cir. 2006)

5

(citations omitted).  An abuse of discretion occurs when the district court "relies on clearly erroneous findings of fact, improperly applies the law or uses an erroneous legal standard." *Id*; *United States v. Cline*, 362 F.3d 343, 348 (6th Cir. 2004).

## II.    ARGUMENT.

**THE GOVERNMENT'S INTENT TO ADMIT DEFENDANT'S BANK STATEMENT, WHICH REFLECTS HIS ACT OF SUBMITTING AN EMPTY DEPOSIT ENVELOPE BEFORE HE CAME TO THE UNITED STATES, AND THEN WITHDREW THAT AMOUNT IN CASH HE CLAIMED TO HAVE PREVIOUSLY DEPOSITED, MUST BE EXCLUDED BECAUSE IT IS EXTRINSIC EVIDENCE OF HIS FRAUD WHICH IS PROHIBITED BY FRE 608(B).**

Mr. Ftouhi moves to suppress proposed exhibit #19 on the grounds that it violates the extrinsic evidence ban of FRE 608(b), because it would impeach Defendant's character for veracity with the bank statement because it is evidence of him committing a fraudulent act.  FRE 608(b) states that, "…extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness."  Extrinsic evidence is another witness's testimony, or a written document, admitted as evidence to prove the fact.

Here, Mr. Ftouhi argues that admission of the bank statement is extrinsic evidence which attacks his character for truthfulness, and is a specific instance of him committing an act of fraud.  Fraud involves a knowing misrepresentation or act of untruthfulness. Therefore, the proffered evidence must be excluded under the extrinsic evidence ban of Rule 608(b).

6

III.   ARGUMENT.

**THE GOVERNMENT'S INTENT TO ADMIT DEFENDANT'S BANK STATEMENT IS UNCHARGED 'OTHER ACTS' EVIDENCE AND MUST BE EXCLUDED UNDER FRE 404 BECAUSE IT IS CHARACTER PROPENSITY EVIDENCE, AND DOES NOT SATISFY THE RULE'S REQUIREMENTS.**

FRE 404(a) states the general character propensity bar that, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."  However, a district court may admit evidence of a defendant's "other bad acts or crimes" only if the evidence is probative of a relevant fact, and not offered to show the defendant's character propensity to commit a criminal act. *United States v. Mack*, 258 F.3d 548 (6th Cir. 2001).  The evidence must be relevant for another purpose, such as establishing "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  FRE 404(b).

To be admissible under Rule 404(b) a three-part test must be satisfied: (1.) the district court must make a preliminary determination as to whether sufficient evidence exists that the prior act occurred, (2.) the court must make a determination as to whether the "other act" is offered for a proper purpose, and (3.) the court must determine whether the "other acts" evidence is more prejudicial than probative under Rule 403. *Mack*, 258 F.3d, at 553.  In determining whether the prior act occurred, the prior act evidence is admissible only if it is established by a preponderance of

the evidence that the defendant committed the uncharged prior act. *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496 (1988).

Here, Mr. Ftouhi argues that the proffered RBC bank statement would be an attack on his character which is precluded by the character propensity bar of FRE 404(a). Assuming the Government establishes by a preponderance of the evidence Mr. Ftouhi made the deposit, then it must also show that he "knew" the deposited envelope contained no money which otherwise would not be evidence of a plan or intent. *Huddleston*, 485 U.S. 681. However, Mr. Ftouhi argues the Government is not offering the bank statement, evidence of his intent to commit fraud, to show he did it to have money to accomplish a planned attack in the United States.

Nevertheless, if this Court does admit the other acts evidence for the limited purposes of either motive, intent, or plan, and gives a limiting instruction to not use the uncharged acts as propensity evidence, then the jury would still use it in a prohibited way as character propensity evidence. See, *Shepard v. United States*, 290 U.S. 96, 104, 54 S.Ct. 22, 78 L.Ed. 196 (1933) (J. Cardozo) (As a result, because "[t]he reverberating clang of those accusatory words would drown out all weaker sounds [and] the risk of confusion is so great as to upset the balance of advantage, the evidence goes out."). Therefore, even if this Court were to find Mr. Ftouhi's bank statement has been offered for a proper purpose, the risk of unfair prejudice in admitting the intentional fraud substantially outweighs its limited probative value.

8

IV.    ARGUMENT.

**THE GOVERNMENT'S INTENT TO ADMIT DEFENDANT'S BANK STATEMENT IS SUBSTANTIALLY OUTWEIGHED BY UNDUE PREJUDICE UNDER FRE 403 AND MUST BE EXCLUDED, BECAUSE WHAT MINIMAL PROBATIVE VALUE THE EVIDENCE MAY ESTABLISH IS COUNTERBALANCED BY THE GOVERNMENT'S LACK OF NEED, AFTER CONSIDERING THE AVAILABILITY OF OTHER MEANS OF EVIDENCE IT WILL ADMIT AT TRIAL.**

Should this Court find that Mr. Ftouhi's bank statement is relevant and offered for a proper purpose, then the next step in the analysis is the 403 balancing test. *Mack*, 258 F.3d, at 553; *United States v. Stout*, 509 F.d 796 (6th Cir. 2007).  The Sixth Circuit has recognized that in limited circumstances uncharged prior acts evidence can have an unduly prejudicial nature that may require exclusion when balancing its probative value against the government's need for the evidence. *Stout*, *supra.*  In *Stout*, the Sixth Circuit affirmed the district court's ruling suppressing 404(b) evidence and found that the lower court had properly considered the government's availability of other means of proof. *Id*.  In doing so, the Sixth Circuit went on to state:

> "While it is true that the government's need for the evidence should be weighed along with its probative value to determine whether it should be admitted under Rule 403, the need for the evidence does not make the evidence more likely to prove that which it is offered to prove. Probative value and need for the evidence are separate considerations that weigh in favor of admission under the Rule 403 balancing test. *See* Fed. R. Evid. 403 advisory committee's note (stating that the rule involves "balancing the probative value of *and* need for the evidence against the harm likely to result from its admission") (emphasis

9

added)." *Stout*, 509 F.3d, at 800; *See also*, FRE 404(b), Adv. Comm. Notes ("The determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence *in view of the availability of other means of proof* and other facts appropriate for making decisions of this kind under Rule 403."). (*emphasis added*)

Here, Mr. Ftouhi argues the Government lacks a legitimate need to admit his bank statement as evidence of his plan or intent, when the availability of other evidence that the Government intends to admit at trial is considered.  At trial, the Government intends to offer evidence of GPS tracking of Mr. Ftouhi going to various gun stores days prior to the incident in search of a weapon, including a vendor who will testify Mr. Ftouhi wanted to purchase an assault rifle.  Moreover, Mr. Ftouhi was in a crowded public airport, with several eyewitnesses who were present and saw him commit the act, he was arrested during its commission, and have been called by the Government to give witness testimony.

Further, following his arrest, Mr. Ftouhi made statements to law enforcement as to why he committed the act, which included references to Usama Bin Laden. Additionally, airport surveillance will be admitted of Mr. Ftouhi being present at the airport one day prior to the incident.  Evidence will also be admitted that Mr. Ftouhi had prior employment experience as a security guard.  And, Canadian officials will testify that pursuant to their search of his home in Canada, they recovered the contents of digital equipment possessed by Mr. Ftouhi of reading materials, recordings, and videos from other individuals with jihadist views.

As a result, Mr. Ftouhi's bank statement is cumulative in view of the Government's other available proofs which it intends to offer at trial to show he planned the attack. Mr. Ftouhi's fraudulent act is unduly prejudicial and substantially outweighs the minimal probative value gained by its admission. Even if this Court were to grant Mr. Ftouhi's motion, the other aforementioned evidence will be admitted at trial.

As such, the Government would still be able to argue to the jury that Mr. Ftouhi intended to commit an act of terrorism, a jihad, by attacking the victim, J.N., with a weapon at the Bishop International Airport. Similarly, the Government would still be able to argue Mr. Ftouhi was influenced by other individuals professing their radical and extremist views of Islam because of the videos and images which were found on his electronic devices. In sum, the only disadvantage to the Government would be the elimination of Mr. Ftouhi's prior bad act, fraud, offered under the guise of a plan or to show intent.

## V.   ARGUMENT.

**THE GOVERNMENT'S INTENT TO ADMIT A PICTURE OF AN ASSAULT RIFLE FROM THE GIBRALTAR GUN SHOW MUST BE EXCLUDED BECAUSE ITS PROBATIVENESS IS SUBSTANTIALLY OUTWEIGHED BY UNDUE PREJUDICE UNDER FRE 403, BECAUSE WHAT MINIMAL PROBATIVE VALUE THE EVIDENCE MAY ESTABLISH IS COUNTERBALANCED BY THE GOVERNMENT'S LACK OF NEED FOR IT AFTER CONSIDERING THE AVAILABILITY OF OTHER MEANS OF PROOF AT TRIAL.**

Mr. Ftouhi moves to suppress proposed exhibit #30 on the grounds that a picture of an assault rifle he did not buy, or the vendor did not allow him to buy, prior to the attack on the victim, must be exclude under FRE 403 because of the availability of other evidence the Government intends to admit at trial. Also, Defendant argues it must be excluded because it is substantially more prejudicial than any fact sought to be proved by its admission. *Id.*

Exhibit 30 is a photograph of an assault rifle from the Gibraltar gun show, which was never purchased or used during the attack at Bishop International Airport.[1] Assuming the Government is offering the evidence to show Mr. Ftouhi's plan or intent, the photograph of the assault rifle is inadmissible because its probative value is substantially outweighed by the danger of undue prejudice. *Id.* The weapon bears a striking resemblance to an AK-47, or AR-15, or other similar weaponry used by Islamic fighters in the Middle East.[2] What the photograph's admission will do is to telegraph to the jury that Mr. Ftouhi is a terrorist based on his interest purchasing it, given its common association with the war in the Middle East.

In addition, the proposed photograph of Mr. Ftouhi's attempted purchase of the assault rifle is cumulative in view of the Government's other available proofs which it intends to offer at trial to show he planned the attack. Even if this Court

---

[1] See attached exhibit A - (Gov't Proposed Exhibit 30).

[2] See attached exhibit B(1), and B(2).

were to grant Mr. Ftouhi's motion to preclude the photo, the other previously listed evidence will be admitted at trial to demonstrate his intent.  Moreover, the Government intends to admit at trial testimony from a witness, Dave Lozon, who worked as a vendor at the Gibraltar gun show, that refused to sell the assault rifle because Mr. Ftouhi was ineligible to buy it due to his Canadian citizenship.  Also, the Government will admit evidence of another knife, different from the one used during the assault of J.N., which was found in the subsequent search of Defendant's vehicle in the airport parking lot, as further evidence of his plan or intent.[3]  Consequently, the only disadvantage to the Government would be suppression of an inflammatory photograph of the rifle, not witnesses' references to it.

## VI.   ARGUMENT.

**THE GOVERNMENT'S INTENT TO ADMIT THOSE PORTIONS OF AN AUDIOTAPE RECORDING MADE AFTER DEFENDANT'S ARREST, IN WHICH HE SPITS ON A FEMALE OFFICER AND REPREATEDLY CALLS HER A "FUCKING BITCH" IS NOT RELEVANT, AND ALSO MUST BE EXCLUDED BECAUSE ITS PROBATIVE VALUE IS SUBSTANTIALLY OUTWEIGHED BY ITS UNDUE PREJUDICE UNDER FRE 403.**

Mr. Ftouhi moves to suppress portions of proposed exhibit #35(a) on the grounds that the audiotaped recording which include Mr. Ftouhi spitting on a female

---

[3] In the opinion of Defense counsel, the knife found in Mr. Ftouhi's van is more reminiscent of a sword, or a Machete, than it is a knife.  It appears to be approximately two to three feet long.

officer, and repeatedly calling her a "fucking bitch," is not relevant to a contested issue at trial. FRE 401.  And, it will so inflame the jury as to be prejudiced against him at trial without regard to guilt.

Here, Mr. Ftouhi argues that his acts of spitting and cussing are not relevant to a contested issue at trial. FRE 401.  However, if this Court should find it is relevant, then Defendant argues it must be excluded because it is substantially more prejudicial than any fact the Government seeks to prove by its admission. FRE 403. The act alone, of one person spitting on another, is so incendiary that it will inflame the passions of the jury to convict Mr. Ftouhi because of his bad character rather than evidence of guilt.[4]

During his interaction with Captain Leigh Golden, a transcript of Mr. Ftouhi praying in Arabic was made by the Government for use at trial, in which the Government will be admitting the English translation.  If the Government wants, it can add to the existing transcript other portions of Mr. Ftouhi's interaction with Captain Golden without the jury hearing the inflammatory material of him spitting and cussing at her.

---

[4] An example of the visceral response to the act of spitting was recently displayed during a professional sports game where a fight erupted between players over one accusing the other of spitting on him. The incident occurred on October 21, 2018, between NBA players, Rajon Rondo of the Los Angeles Lakers and Chris Paul of the Houston Rockets.
See, http://www.espn.com/nba/story/_/id/25047465/multiple-suspensions-lakers-rockets-scuffle.

## VII.   ARGUMENT.

**THE GOVERNMENT'S INTENT TO ADMIT THE LETTERS DEFENDANT WROTE TO HIS WIFE MUST BE EXCLUDED BECAUSE THEY ARE CONFIDENTIAL COMMUNICATIONS PROTECTED BY THE MARITAL PRIVILEGE.**

Mr. Ftouhi moves to suppress proposed <u>exhibits #36 and 37</u> on the grounds that the letters he wrote to his wife, which occurred while they were married, are confidential communications protected by the marital privilege.  At common-law, there are two types of marital privilege. *United States v. Sims,* 755 F.2d 1239, 1240 (6th Cir. 1985).  One privilege is the privilege against adverse spousal testimony.  In *Trammel v. United States*, 445 U.S. 40, 53, 100 S.Ct. 906, 913, 63 L.Ed.2d 186 (1980), the Supreme Court held that under the privilege against adverse spousal testimony, "the witness-spouse alone has a privilege to refuse to testify adversely; the witness may be neither compelled to testify nor foreclosed from testifying." Whereas the other marital privilege, and is the privilege at issue in Mr. Ftouhi's case, is that which protects confidential communications between husband and wife. *Sims*, *supra*, at 1241.

In *Trammel*, the Court noted that the privilege regarding confidential marital communications was distinct from the privilege against adverse spousal testimony. It observed that the holdings of *Wolfle v. United States*, 291 U.S. 7, 14, 54 S.Ct. 279, 280, 78 L.Ed. 617 (1934) and *Blau v. United States*, 340 U.S. 332, 333-34, 71 S.Ct. 301, 302, 95 L.Ed. 306 (1951) (confidential marital communications are privileged),

15

remained valid. *Id*. at 45 n. 5.  Consequently, although the privilege against adverse spousal testimony vests in the witness, the defendant retains the privilege to foreclose testimony regarding confidential marital communications under *Blau* and *Wolfle*. See, *United States v. Klayer*, 707 F.2d 892, 894 (6th Cir.), *cert. denied*, 464 U.S. 858 (1983).

According to the Court, the purpose behind the marital communications privilege is it is "so essential to the preservation of the marriage relationship as to outweigh the disadvantages to the administration of justice." *Wolfle, supra,* at 617. Marital communications are presumed to be confidential, and it is the government's burden to show it is not intended to be a private communication. *Pereira v. United States*, 347 U.S. 1, 6, 74 S.Ct. 358, 98 L.Ed. 435 (1954).  Or, that an exception applies.  See, *United States v. Howard*, 216 Fed.Appx. 463, *471, 2007 WL 177890 (exception to confidential marital communications privilege exists for conversations regarding joint ongoing or future illegal activity).

Here, neither letter implicates future criminal conduct.  Mr. Ftouhi argues that he wrote the two letters to his wife, Najwa Ftouhi, while he was in jail awaiting trial in this case, which were intended as confidential communications made during the course of their marriage.[5]  A defendant's letter to his wife while he is in jail is still

---

[5] See, Exhibit C(1) – (Gov't Proposed Exhibit 36(a)), and exhibit C(2) – (Gov't Proposed Exhibit 36(b) is the FBI's translation of 36(a));

16

protected by the privilege. See, *United States v. Howton*, 260 Fed.Appx. 813, *819, 2008 WL 162945 471 (defendant's letter to his wife written while he was in jail awaiting trial was protected by marital privilege, but the letter's admission at trial was held harmless in light of other evidence).  Thus, the marital communications privilege applies to Mr. Ftouhi's letters to his wife and must be excluded.

## VIII.  ARGUMENT.

**THE GOVERNMENT'S INTENT TO ADMIT PICTURES OF THE VICTIM'S NECK SHOWING HE WAS STITCHED-UP AFTER THE ATTACK MUST BE EXCLUDED BECAUSE THEIR PROBATIVE VALUE IS SUBSTANTIALLY OUTWEIGHED BY UNDUE PREJUDICE UNDER FRE 403.**

Mr. Ftouhi moves to suppress proposed <u>exhibit #38</u> on the grounds that the several pictures of J.N.'s neck showing he was stitched-up after the attack will only inflame the jury and give undue sympathy to an already sympathetic victim. Defendant argues they must be excluded under FRE 403 because they are substantially more prejudicial than any fact they are offered to prove.

Here, Mr. Ftouhi argues that the post-op photographs of the victim's injury are too gruesome to be shown to the jury.  It is unduly prejudicial because it will so inflame the passions of the jury that it runs the risk of the jury convicting Defendant

---

Exhibit C(3) -- (Gov't Proposed Exhibit 37(a)), and Exhibit C(4) -- (Gov't Proposed Exhibit 37(b) is the FBI's translation of 37(a)).

not because he is guilty, but because of the jury's sympathy for J.N.[6]  The victim is already sympathetic without the proffered evidence because he is a quasi-law enforcement officer injured in line of duty, who was attacked from behind with a knife.  Even if the gruesome pictures are excluded, then the Government will still be able to show the victim's scars to the jury when he testifies, other eye-witnesses will be able to testify to their observation of his injuries, and Dr. Donald Scholten who treated J.N. will be able to testify to the details of the victim's potentially life threating injury, without the shock value of admitting the photographs.

IX.   <u>ARGUMENT.</u>

**THE GOVERNMENT'S INTENT TO ADMIT DEFENDANT'S LAST WILL AND TESTAMENT THAT POLICE FOUND AT HIS HOME IN CANADA AFTER THE INCIDENT, WHICH WAS WRITTEN ON AN UNKNOWN DATE BEFORE HE CAME TO THE UNITED STATES, MUST BE EXCLUDED BECAUSE IT IS NOT RELEVANT AND TOO REMOTE IN BOTH TIME AND PLACE, AND ANY MINIMAL PROBATIVE VALUE IT HAS IS SUBSTANTIALLY OUTWEIGHED BY ITS UNDUE PREJUDICE UNDER FRE 403.**

Mr. Ftouhi moves to suppress proposed <u>exhibit #16</u> on the grounds that his undated last will and testament found by police in Canada, offered as an admission by a party-opponent under FRE 801(d)(2), must be excluded because it is too remote in both time and place, and not probative of a fact in issue as required by FRE 401.

---

[6] See attached exhibit D – (<u>Gov't Proposed Exhibit 38</u>).

And, Defendant argues it must be excluded because it is substantially more prejudicial than any fact sought to be proved by it. FRE 403.

Initially, any evidence sought to be admitted must first satisfy the relevancy threshold of Rule 401.  Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence, and (b) the fact is of consequence in determining the action. FRE 401.  In the case at bar, Mr. Ftouhi's will does not allude to any facts and circumstances of the subsequent attack at Bishop International Airport.[7]  Rather, the document speaks mostly to his religion, includes his last requests to his wife concerning their children's upbringing, and future living arrangements for his family.

Moreover, Mr. Ftouhi's will was found in a safe in the family's apartment IN Montreal, Canada during the execution of a search warrant after the attack in the United States.  It is not dated.  It is unknown whether he made it one day before he came to the United States, or ten years.  As such, Mr. Ftouhi argues that it is too remote in both time and place to be relevant. See, *United States v. Baker*, 116 F.3d 1486, 1997 WL 345825 (9th Cir. 1997)  (noting that the remoteness in time of a statement can affect its relevancy); see also, *People v. DeRushia*, 109 Mich. App. 419, 426 (1981) (state court case noting that once defendant's statement is deemed an admission the issues of relevancy and remoteness are raised).

---

[7] See attached exhibit E – (FBI's translation of Mr. Ftouhi's will).

In short, the proffered will lacks both subject matter and temporal nexus for demonstrating it is relevant to the airport attack committed in the United States. Nevertheless, if this Court deems it is relevant and not too remote, then Mr. Ftouhi also argues the will must be excluded because it is substantially more prejudicial than any fact it seeks to prove. FRE 403. The reason is, that the references within the document to certain Islamic beliefs only serve to use Mr. Ftouhi's religion against him as evidence of guilt.

## X.    RELIEF REQUESTED.

In conclusion, Mr. Ftouhi respectfully requests that this Court grant his motion in limine to preclude the admission of:  his bank statements, a photograph of an assault rifle from the Gibraltar gun show, inflammatory portions of the audiotaped recording by Captain Leigh Golden, Mr. Ftouhi's letters to his wife, the post-operative photographs of the victim, and his last will and testament.  In the alternative, he seeks an evidentiary hearing as to the issues presented.

Respectfully submitted,

s/ Joan E. Morgan
Attorney for Defendant
Federal Defender Office
111 East Court St., Ste. L-100
Flint, Michigan 48502
(810) 232-3600
joan_morgan@fd.org

20

CERTIFICATE OF SERVICE

I certify that on October 23, 2018, I filed the foregoing document using the

ECF system, which will send notification of the filing to opposing counsel of record.

s/ Joan Ellerbusch Morgan