UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,                           Case No. 17-cr-20456

        Plaintiff,                                  Hon. Matthew Leitman

v.

AMOR M. FTOUHI,                                      **FILED UNDER SEAL**

        Defendant.

_____/

**REPLY TO GOVERNMENT'S RESPONSE
TO DEFENDANT'S MOTION IN LIMINE**

NOW COMES Defendant, AMOR FTOUHI, by and through counsel, Joan E.

Morgan of the Federal Defender Office, pursuant to local court rule, LR 7.1, submits

the following reply to the Government's response to Defendant's motion to preclude

the admission of the aforementioned exhibits.  Additionally, on October 30, 2018,

the Government notified Defendant of its intent to admit a photograph of the gun

display case at Walmart.[1]  Defendant objects to the photo of the gun display case,

for the same reasons he objects to the photo of the assault rifle from the Gibraltar

gun show, which is incorporated into the same argument.

---

[1] See, attached Exhibit F - (Gov't Proposed Exhibit of Walmart gun display).

1

In its response, the Government requests that this Court reserve ruling on all of the exhibits objected to, except for the will, "so that the Court may make its ruling in the context of [ ] other evidence [ ] at trial."[2]  However, this argument is flawed for two reasons.  First, it would defeat the reason for bringing the motion at all.  The very purpose of a motion in limine is to have a ruling on evidence <u>in advance of trial</u> in order to avoid delay, making trial more expeditious, and to focus the issues for the jury's consideration. *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999) (holding the rules of evidence, civil procedure, criminal procedure, and interpretive rulings of the Supreme Court all encourage parties to use pretrial procedures, such as motions in limine, to narrow the issues and minimize disruptions at trial); *Jonasson v. Lutheran Child and Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997).

Such motions, as in Mr. Ftohui's case, serve important gatekeeping functions by allowing the trial judge to eliminate from consideration evidence that should not be presented to the jury. *Jonasson*, 115 F.3d at 440.  Secondly, the Government does not dispute the litany of other evidence it will use at trial, which Defendant listed in his motion under the 403-balancing test, and which will be offered to show Mr. Ftouhi planned the attack.[3]  The Government has several other avenues available to establish Mr. Ftouhi's intent without admitting the grossly prejudicial material.

---

[2] See, *Gov't. Response*. P. 1.
[3] See, *Def. Br.* P. 10-11, 12-13, 18-19.

Thus, the Government does not have a legitimate need.[4]

**Bank statement**

The Government submits that it needs to admit this evidence to corroborate Mr. Ftouhi's "statement to the FBI that he withdrew money for his attack while in Canada" to show his preparation and planning, which is an element of count three.[5] However, the Defense already stipulated Mr. Ftouhi took steps to commit his crime while outside the United States. (R. 49, 50). Moreover, the Government could redact the document to show only his withdrawal of funds; it does not need to show a fraudulent deposit and its credit back to the bank. Any juror having experience with a financial institution will know what happened even if the Government does not make direct references.

---

[4] Defendant acknowledges FRE 403 is *in favor of admissibility*, i.e., to be excluded the evidence must be substantially outweighed by its unfair prejudice. However, there are exceptions to admission which is why the balancing test was created. The Government cites *United States v. Mendez-Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986), for the proposition that unfair prejudice "refers to evidence which tends to suggest decision on an improper basis." *Gov't. Response*. P. 5. This is the crux of the Defendant's motion; that once the jury hears or sees the unduly prejudicial material it will base its decision on reasons other than guilt, which are unintended consequences flowing from admission. The Government, in its response, fails to address the holding of *United States v. Stout*, 509 F.3d 796 (6th Cir. 2007), which stands for the proposition that the determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence *in view of the availability of other means of proof.* Hence, probative value and need for the evidence are separate considerations. *Id.* Here, Mr. Ftouhi argues the Government's lack of need, and because it is unduly prejudicial, counterbalances against admission.

[5] *Gov't. Response*. P. 2-3.

**Photo of Gibraltar Assault Rifle <u>and Walmart gun display case</u>**

The Government submits that it needs to admit this evidence, and presumably the Walmart photo, to show Mr. Ftouhi's intent to commit murder.[6]  However, the Government has a plethora of other evidence to establish this proof.  Mainly, the Defendant's actions during the attack, by stabbing the victim and making a cut halfway around his neck, and Mr. Ftouhi's subsequent admissions after his arrest that he intended to kill armed United States Government (USG) employees.[7]

Moreover, a vendor from the Gibraltar gun show will testify to the inference that Mr. Ftouhi tried unsuccessfully to purchase a gun from him.[8]  And, Mr. Ftouhi stated to the FBI he "collected $1500 dollars for the purposes of purchasing a gun" and that "he attempted to purchase a gun at Gibraltar, but vendors wouldn't sell him one because he wasn't a U.S. citizen."[9]  Also, evidence will be admitted of a Walmart videotape showing Mr. Ftouhi looking at the gun and knife display prior to the attack.[10]  Thus, the only disadvantage to the Government would be suppression of inflammatory photographs, not witnesses' references to their subject matter.

Hence, the pictures are cumulative and unduly prejudicial evidence of

---

[6] *Gov't. Response.* P. 4-5.

[7] See, attached Exhibit G(1), and G(2) – (FBI 302's of Mr. Ftouhi's statements during his interrogation).

[8] *Gov't. Response.* P. 4.

[9] Exhibit G(2) – (Page 5 of 7).

[10] The video does not show a direct view of the gun display containing the approximately 30 to 40 rifles, bullets, and knives depicted in the photograph.

weapons that were not used during the attack. FRE 403.  The undue prejudice by admitting these photographs is an inference of guilt by association.  The imagery from media coverage over the past twenty years of Middle Eastern Islamic fighters using similar weapons, and potential admission at trial of videos from Mr. Ftouhi's electronic devices of Islamic extremists holding similar weapons, will prompt the jury to link him to a terrorist act because of his attempted purchase of that firearm, which is not an issue in dispute.

### Post-arrest Audio Recording

The Government submits that it needs to admit this evidence, of Mr. Ftouhi cussing and spitting on another officer after the attack, to show his intent to kill. However, this evidence is after-the-fact and the Government concedes it is post-arrest.  At issue in count three of the indictment is whether Mr. Ftouhi "intentionally attempted to kill J.N.[,]" not his intent toward officer Golden.  Even if it were, and no matter how hard he tried, Mr. Ftouhi could not kill her by spitting and cussing.

Regardless, Mr. Ftouhi's intent will be shown not only by his actions during the attack on J.N., but also by his subsequent statements.  Officer Golden will testify that after Mr. Ftouhi was arrested, he reached for her gun and said he wanted to kill her.  Further, Mr. Ftouhi stated during his interrogation, to FBI Agent Michael Wiggins and Task-Force Officer Shadi Elreda, that he would kill them both if he had

the opportunity because they were carrying guns.[11]  Hence, Mr. Ftouhi's hatred of armed USG employees will be well established with other evidence and therefore the audio recording is cumulative, and more so, unduly prejudicial. FRE 403.

**Photos of the victim's neck**

The Government submits that it needs to admit this evidence to show the attack caused serious bodily injury and that Mr. Ftouhi intended to kill J.N.  In support, the Government cites *United States v. Brady*, 595 F.2d 359 (6th Cir. 1979), for the proposition that "far more graphic" autopsy photos are routinely admitted.[12] However, this case is distinguishable from *Brady* because the victim in this case is alive and able to talk about his injuries.  In *Brady*, the Sixth Circuit, which only found that the district court had not abused its discretion, noted in that case:

> "The photographs, while not pleasant to behold, are not as gruesome as appellants would have us believe. They depict three of the four victims lying on the floor of the bank in pools of their own blood. The blood is the only distasteful aspect of the photographs inasmuch as the wounds are not visible nor are there any other indications of violence." *Id.* at 361.

Whereas in Mr. Ftouhi's case, the photos clearly show J.N.'s gruesome wounds, while dressed in a surgical gown at a hospital, following the attack.

As such, Mr. Ftouhi argues the photos of the victim's injury are too gruesome to be shown to the jury.  They are unduly prejudicial because it will so inflame the

---

[11] Exhibit G(2) – (Page 1 of 7).
[12] *Gov't. Response*. P. 11.

passions of the jury that it runs the risk of the jury convicting Defendant not because he is guilty, but because of the jury's sympathy for J.N. FRE 403. Even if the gruesome pictures are excluded, the Government will still be able to show via the opinion of Dr. Scholten, who treated J.N., that Defendant "exerted substantial force in a particularly lethal [bodily] area during his attack" as evidence of intent to kill.[13]

**Mr. Ftouhi's Letters to his Wife, and His "Will"**

The Government's need to admit this evidence is irrelevant because all three documents are protected by the confidential communications marital privilege.[14] Marital communications are presumed to be confidential. *Pereira v. United States*, 347 U.S. 1, 6 (1954). To rebut the presumption, the government must show that it was not intended to be a private communication. *Id.* The presence of a third party during the communication destroys the privilege. *Id.*

Here, the two letters Mr. Ftouhi sent his wife from jail were intended to be private. Unlike jail calls, where signs are posted that the calls are being recorded, Mr. Ftouhi argues that there is no notice with regard to mail "potentially" being read. The Government's argument against Mr. Ftouhi's privacy, because mail sent to his wife "may be subject to" a search, flies in the face of the general public's privacy in

---

[13] *Gov't. Response*. P. 11.

[14] Defendant is amending his argument to include the document described as a "will." Since this argument is being raised for the first time, in this reply, out of fairness the Government should be entitled to respond to the new argument raised.

sending confidential mail through the U.S. Postal System although it is subject to searches for either drugs or explosive devices.

Notwithstanding, the potential presence of a third party is not the triggering mechanism, but rather actual presence is required to destroy the privilege. As such, BOP regulations that inmate mail "may be read" or "is subject to being read" is insufficient. Here, there is no evidence Mr. Ftouhi's letters that he addressed to his wife were actually read by BOP; instead, the private communications made it unimpeded to their intended destination in Canada where they were subsequently found. Moreover, both letters were written entirely in Arabic.

Additionally, the Government argues the privilege is destroyed because in one of the letters Mr. Ftouhi makes the sentence structure: "[t]ell my children that I love them all; they must be proud of their father, who is fighting the infidel criminals."[15] The Government argues that, this shows Mr. Ftouhi did not intend the letter to remain confidential, but rather intended it to be shared with his children. However, the Defense disagrees. The subject discussed with his wife was an expression of emotion, that he wanted his children to know he loved them, which does not demonstrate an intent to share the entire letter with them. Mr. Ftouhi's privilege is not destroyed because he used a semicolon instead of a period.

With regard to the document identified as his "will," Mr. Ftouhi argues that it

---

[15] *Gov't. Response*. P. 10.

is also a confidential communication protected by the marital privilege; four of the paragraphs contained therein are specifically addressed to his wife, Najwa.  Mr. Ftouhi argues that the document was never intended to be given to a third party, such as probate, because it does not address the distribution of any property upon his death.  Similarly, the document was never legally acknowledged by a third party. Rather, it was found by law enforcement only after a search of his home in Montreal, Canada, where it was located in a locked safe that only his wife had access to.

The Defense concedes that the document does make limited references to "family," other "Muslims," and "my brothers," but argues that these are ambiguous references about his desired reputation in the Muslim community.  The document itself does not direct his wife to post its contents publicly, nor direct her to give it to a specific identified individual.  Since the marital communication is presumed confidential, Mr. Ftouhi argues that any ambiguity inures to his benefit that the presumption of the privilege applies.  Alternatively, if this Court should determine the privilege does not apply, then Mr. Ftouhi argues it still must be excluded under FRE 403 because the references within the document to certain Islamic beliefs only serves to use Mr. Ftouhi's religion against him as evidence of guilt.

WHEREFORE, Mr. Ftouhi respectfully requests that this Honorable Court exclude the above listed evidence for the aforementioned reasons in Defendant's Motion, and his Reply to the Government's Response.

Respectfully submitted,


s/ Joan E. Morgan
Attorney for Defendant
Federal Community Defender - Flint
111 East Court St., Ste. L-100
Flint, Michigan 48502
(810) 232-3600
joan_morgan@fd.org


CERTIFICATE OF SERVICE

I certify that on October 31, 2018, I filed the foregoing document under seal using the ECF system, and I emailed a copy of the document to opposing counsel of record.

s/ Joan E. Morgan